

EXHIBIT "A"

## AMENDED PETITION FOR POST-CONVICTION RELIEF
(RULE 40, HRPP)

FILED

2018 JAN 16 AM 11: 11

*Jean Kikumoto*
APPELLATE COURTS
STATE OF HAWAII
Ex Officio Clerk
Circuit Court ___3rd___ Cir

| | |
|---|---|
| **Name** | ALBERT IAN SCHWEITZER |
| **Prison Number** | #A-0736224 |
| **Place of Confinement** | SAGUARO CORRECTIONAL CENTER, 1250 East Arica Road, |
| Eloy, AZ  85131 | |
| **SPP No.** | 17-1-0002 |

(to be supplied by Clerk of the Court)

| | |
|---|---|
| **ALBERT IAN SCHWEITZER,** | ) |
| | ) Case No. S.P.P. No. 17-1-0002 |
| **Petitioner,** | ) |
| | ) VERIFIED AMENDED PETITION TO VACATE, |
| **vs.** | ) SET ASIDE OR CORRECT JUDGMENT OR TO RE- |
| | ) LEASE PETITIONER ALBERT IAN SCHWEITZER |
| | ) FROM CUSTODY; MEMORANDUM OF LAW IN |
| | ) SUPPORT OF AMENDED PETITION; DECLARA- |
| **STATE OF HAWAIʻI,** | ) TION OF COUNSEL; EXHIBITS A-RRR; |
| | ) CERTIFICATE OF SERVICE |
| **Respondent.** | ) |
| | ) |
| | ) CIRCUIT COURT OF THE THIRD CIRCUIT, HILO |
| | ) DIVISION |
| | ) |

## VERIFIED AMENDED PETITION TO VACATE, SET ASIDE, OR CORRECT JUDGMENT OR TO RELEASE PETITIONER ALBERT IAN SCHWEITZER FROM CUSTODY

(1)　This petition must be legibly handprinted or typewritten, and signed by the petitioner under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

(2)　If briefs or arguments or citation of authorities are submitted, they must be in a separate memorandum.

(3)　You must submit either the appropriate filing fees, or a Request to Proceed Without Paying Filing Fees (Form B) with this petition. Upon receipt, your petition will be filed. Your Request to Proceed Without Paying Filing Fees (Form B) will be either approved or denied after consideration by the court. If your Request to Proceed Without Paying Filing Fees (Form B) is denied, you will be notified that you must pay the filing fees in order to proceed with your petition and that, if you fail to pay, your petition will be dismissed.

(4) The Request to Proceed Without Paying Filing Fees (Form B) must be signed, setting forth information establishing your inability to pay. If you are in custody and you wish to proceed without paying filing fees, you must also have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit in your account in the institution.

(5) You may challenge only one judgment of conviction in this petition. If you seek to challenge judgments entered by different judges or divisions either in the same court or in different courts, you must file separate petitions as to each such judgment.

(6) You must include all grounds for relief and all facts supporting the grounds for relief in this petition.

(7) Unless filed electronically pursuant to the Hawai'i Electronic Filing and Service Rules, when the petition is fully completed, the original and 2 copies must be mailed to the Clerk of the Court where the conviction was entered and whose address is:

(to be stamped by the Clerk)

## AMENDED PETITION TO VACATE, SET ASIDE, OR CORRECT JUDGMENT OR TO RELEASE PETITIONER FROM CUSTODY

1. Name and location of court that entered the judgment of conviction that you are challenging in this petition: **Circuit Court of the Third Circuit, State of Hawai`i.**

   a. Case Number: **3PC99-147**

   b. Trial judge: **The Honorable Riki May Amano**

2. Date of judgment of conviction: **April 24, 2000**

3. Length of sentence: **Life with the possibility of parole, 20 years, and 20 years, as follows**:

   a. HRS § 707-701.5 (Count I)    Second Degree Murder: life with possibility of parole

   b. HRS § 707-720    Kidnapping: 20 years (Count II)

   c. HRS § 707-730(1)(b) First Degree Sexual Assault: 20 years (Count III)

   Please Note: The Trial Court made the sentences in Counts I, II, and III run consecutively with each other.

4. Nature of offense involved (all counts):

   HRS § 707-701.5    Murder in the Second Degree (Count I)

   HRS § 707-720    Kidnapping (Count II)

2

HRS § 707-730(1)(b) Sexual Assault in the First Degree (Count III)

5. What was your plea? (Check one)

    a. Not guilty    \_\_X\_\_

    b. Guilty    _____

    c. No Contest    _____

    If you changed your plea, what did you change it to?

    (a)    Guilty    \_\_N/A\_\_\_\_\_

    (b)    No Contest    \_\_N/A\_\_\_

6. Type of trial: (Check one)

    a. Jury    \_\_X\_\_\_

    b. Judge only    _____

7. Did you testify at the trial?

    Yes _____ No \_\_X\_\_

8. Did you appeal from the judgment of conviction?

    Yes \_\_X\_\_\_ No _____

9. If you did appeal, answer the following:

    (a) Appeal Number: <u>(Hawai'i Supreme Court) **23465**</u>

    (b) Result: **Affirmed**.

    (c) Date of result: **January 29, 2004**.

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any court?

    Yes \_\_X\_\_\_ No _____

11. If your answer to 10 is "yes," give the following information:

    (a)    (1) Name of court: **United States District Court for the District of Hawai`i**

        (2) Case Number: **CV05-00065 (*pro se*)**

        (3) Name of judge: **The Honorable David Alan Ezra, United States District Court Judge**

        (4) Nature of proceeding: **Petition for Writ of Habeas Corpus**

        (5) Grounds raised:

        **Jury selection, ineffective assistance of counsel, prosecutorial misconduct, First Amendment - freedom of speech, Fifth Amendment – double jeopardy, and Fourteenth Amendment – equal protection of laws.**

        (6) Did you receive an evidentiary hearing on your petition, application or motion?

        **No.**

        (7) Result: **Dismissed without prejudice and ordered to amend to name**

**proper respondent.**

(8) Date of result: **February 8, 2005**

(b)    As to any second petition, application or motion, give the same information:

(1) Name of court: **United States District Court, District of Hawai`i**

(2) Case Number: **CV 05-00065**

(3) Name of judge: **The Honorable Leslie E. Kobayashi, United States District Court Judge**

(4) Nature of proceeding: **Amended Petition for Writ of Habeas Corpus**

(5) Grounds raised:

**"Ground One: First Amendment - Freedom of Speech"; "Ground Two: Fifth Amendment, Double Jeopardy"; "Ground Three: Sixth Amendment, (a) Ineffective Assistance of Counsel, (b) Jury Impartiality & Confrontation Clause, (c) Prosecutorial Misconduct"; "Ground Four: Fourteenth Amendment, Equal Protection of Laws." On May 20, 2005, Petitioner filed an "Addenda To Petition with Corrections" that raised the following grounds: "Ground One: The circuits [sic] courts [sic] denial of motion to change venue because of unfair and overly prejudicial media coverage"; "Ground Two: Ineffective Assistance of Counsel"; "Ground Three: Prosecutorial/state Misconduct"; and "Ground Four: 6th Amendment violation of confrontation clause of the U.S. Constitution."**

(6) Did you receive an evidentiary hearing on your petition, application or motion?

Yes _____ No __X__

(7) Result: The petition was administratively closed without prejudice to re-filing, so that Petitioner could exhaust his unexhausted state claims.

(8) Date of result: **January 4, 2007. On August 24, 2016, the federal court issued an "Order Assessing Status Of Petitioner's Claims And Directing Petitioner To Either Dismiss Unexhausted Claims Or File Rule 40 Motion In State Court By December 30, 2016."**

(c) As to any third petition, application or motion, give the same information:

(1) Name of court: Not applicable.

(2) Case Number: Not applicable.

(3) Name of judge: Not applicable.

(4) Nature of proceeding: Not applicable.

(5) Grounds raised: Not applicable.

(6) Did you receive an evidentiary hearing on your petition, application or motion?

Not applicable.

(7) Result: <u>Not applicable.</u>

(8) Date of result: <u>Not applicable.</u>

(d) Did you appeal the action taken on any petition, application or motion?

(1) First petition, etc.: <u>Not applicable.</u>

(2) Second petition, etc.: <u>Not applicable.</u>

(3) Third petition, etc.: <u>Not applicable.</u>

(e) If you did **not** appeal from the adverse action on any petition, application or motion, explain briefly why you did not.

<u>Not applicable.</u>

12. State every ground on which you claim you are being held unlawfully. State the facts supporting each ground. If necessary, you may attach pages stating additional grounds and the supporting **facts**.

**CAUTION**: If you fail to state all grounds in this petition, you may be prohibited from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. You may raise any grounds in addition to those listed. However, **you should raise all grounds** relating to this conviction in this petition.

If you select any of these grounds for relief, you must state the supporting facts. The petition will be denied if you merely check any of the listed grounds or if you fail to provide supporting facts.

(a)   A plea of guilty that was unlawfully induced or not made knowingly, intelligently, or voluntarily or with an understanding of the nature of the charge(s) and the consequences of the plea.

(b)   Use of a coerced confession.

(c)   Use of evidence obtained pursuant to an unconstitutional search and seizure.

(d)   Use of evidence obtained pursuant to an unlawful arrest.

(e)   A violation of the privilege against self-incrimination.

(f)   Failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)   Violation of the protection against double jeopardy.

(h)   Unconstitutionally selected and impanelled grand or trial jury.

(i)   Ineffective assistance of counsel.

(j)   Prosecutorial misconduct.

(k)   Violation of Rule 48 (Right to a speedy trial).

(l)   Lack of jurisdiction of the court that entered the judgment.

A.   Ground One: <u>Actual Innocence.</u>

State supporting FACTS (do not cite cases or law): ***<u>See attached memorandum.</u>***

B.     Ground Two: <u>Ineffective Assistance of Counsel.</u>

State supporting FACTS (do not cite cases or law): *<u>See attached memorandum.</u>*

C.     Ground Three: <u>Denial of Due Process under the United States and Hawai`i Constitutions.</u>

State supporting FACTS (do not cite cases or law): *<u>See attached memorandum.</u>*

D.     Ground Four: <u>New Evidence (DNA).</u>

State supporting FACTS (do not cite cases or law): *<u>See attached memorandum.</u>*

E.     Ground Five: <u>New Evidence (Accident Reconstruction/Junk Science).</u>

State supporting FACTS (do not cite cases or law): *<u>See attached memorandum.</u>*

13.     If you are raising any of the grounds in number 12 for the first time, state why. (Attach additional pages, if needed.):

No physical and direct evidence links Ian Schweitzer to either crime scene. This case was entirely circumstantial. The exculpatory DNA results were not previously available, so were not previously presented. The ineffective assistance of trial counsel issue was not properly raised because of the ineffective assistance of appellate counsel. In the case of the issues not previously raised on appeal, Ian Schweitzer relied on his appellate attorneys, as he did not know law or legal procedure. Pursuant to Rule 40(a)(3) of the Hawai`i Rules of Penal Procedure, waiver of an issue requires that a "petitioner knowingly and understandingly failed to raise it . . . ." Although some of the above grounds were previously mentioned without effective analysis, Petitioner's prior attorneys, one ineffective in the trial court and the other ineffective on appeal, precluded Ian Schweitzer from having his claims considered on the merits, deprived and impaired his defense, and prevented him from having the proper appellate review required under the Hawai`i and United States Constitutions. The ineffective performance of both trial and appellate counsel in this matter should not bar examination of the strong evidence of Ian Schweitzer's innocence.

14.     Do you have any petition or appeal now pending in any court concerning the judgment you are challenging in this petition? Yes __X__ No ____. If so, give the court name, court location and case number:

**The Honorable Leslie E. Kobayashi ; United States District Court, District of Hawai`i, CV 05-00065.**

15.     Give the name and address, if known, of each attorney who represented you in the

following stages of the proceeding that resulted in the judgment being challenged:

(a) At preliminary hearing: **James Biven, 84-4799 Mamalahoa Highway, Captain Cook, HI 96704**

(b) At arraignment and plea: **James Biven**

(c) At trial: **James Biven**

(d) At sentencing: **James Biven**

(e) On appeal: **Peter Van Name Esser, P.O. Box 11170, Honolulu, HI 96828**

(f) In any post-conviction proceeding: Federal Habeas Corpus petition: *pro se*

(g) On appeal from any adverse ruling in a post-conviction proceeding:

Not applicable

16.    Were you sentenced on more than one count of a charge, complaint, information or indictment?

Yes __X__ No _____

17.    Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging in this petition?

Yes _____ No __X__

(a) If so, give the case number and the name and location of the court that imposed the sentence to be served in the future:

Not applicable.

(b) Give date and length of sentence to be served in the future:

Not applicable.

(c) Have you filed, or do you contemplate filing any petition challenging the judgment that imposed the sentence to be served in the future?

Not applicable.

Petitioner requests that the Court grant all relief to which the petitioner may be entitled in this proceeding.

For the Hawai'i Innocence Project:

BROOK HART, #723                1/15/18

WILLIAM A. HARRISON, #2948


Attorneys for Petitioner
ALBERT IAN SCHWEITZER

7

## VERIFICATION

By my signature below, I hereby verify, swear and affirm that the facts asserted in the document or legal pleading attached hereto are all true and correct to the best of my knowledge and belief.

_Albert Ian Schmitt_    1/5/18
ALBERT IAN SCHWEITZER

STATE OF ARIZONA     )
                     )  SS.
COUNTY OF _Pinal_    )

On this _5_ day of _January_, 201_8_, before me personally appeared ALBERT IAN SCHWEITZER, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he executed the same as his free act and deed.

* OFFICIAL SEAL *
S. Murray
Notary Public - Arizona
Pinal County
My Commission Expires 9/30/2020

_S. Murray_
Notary Public, State of Arizona
My commission expires: _9/30/2020_

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT
HILO DIVISION
STATE OF HAWAIʻI

| | |
|---|---|
| ALBERT IAN SCHWEITZER,<br><br>Petitioner,<br><br>vs.<br><br>STATE OF HAWAIʻI,<br><br>Respondent. | )<br>) Case No. S.P.P. No. 17-1-0002<br>)<br>) MEMORANDUM IN SUPPORT OF<br>) VERIFIED AMENDED PETITION FOR POST-<br>) CONVICTION RELIEF; DECLARATION OF<br>) COUNSEL; EXHIBITS A-RRR; CERTIFICATE<br>) OF SERVICE<br>)<br>) CIRCUIT COURT OF THE THIRD CIRCUIT.<br>) HILO DIVISION<br>)<br>) THE HON. RIKI MAY AMANO<br>) THE HON. GLENN HARA<br>)<br>)<br>) |

MEMORANDUM IN SUPPORT OF VERIFIED AMENDED PETITION FOR POST-
CONVICTION RELIEF

# TABLE OF CONTENTS

Table of Authorities...................................................................................................iii

I.      FACTUAL OVERVIEW OF THE CASE.......................................................... 2

II.     GROUND ONE: Actual Innocence..................................................... 5

III.    GROUND TWO: Ineffective Assistance of Counsel.......................................... 5

        A. Ineffective Assistance of Trial Court Counsel............................................... 6

            1. Under the Hawai'i Constitution................................................. 6

            2. Under the United States Constitution...................................... 6

            3. Biven's ineffectiveness permeated his pretrial preparation,
               investigation, case theory and advocacy..................................... 7

                a. Failure to Investigate............................................................. 7

                b. Introduction of Inadmissible Hearsay Evidence and Unqualified
                   Expert Opinion..................................................................... 9

                    1. Sergeant Robert Wagner.................................................. 9

                    2. Ricardo Wayne Hopkins.................................................. 9

                    3. Damien Fiero................................................................. 9

                    4. Ama Sherrel................................................................... 9

                    5. Richard Trenda.............................................................. 9

                c. Tire Castings......................................................................11

                d. Ian's Re-Indictment..........................................................12

        B. Ineffective Assistance of Appellate Court Counsel.....................................14

            1. Under the Hawai'i Constitution............................................14

i

2. Under the United States Constitution.......................................................15

3. Misrepresentation of Facts.......................................................16

4. Hearsay Testimony.......................................................16

5. Ian's Re-Indictment.......................................................17

6. Failure to Investigate.......................................................17

IV.     GROUND THREE: New Evidence (DNA).......................................................18

A. DNA issue 1.......................................................18

B. DNA issue 2.......................................................18

C. DNA issue 3.......................................................18

D. DNA issue 4.......................................................18

E. Supporting Statement.......................................................19

V.      GROUND FOUR: New Evidence
        (Accident Reconstruction/Junk Science).......................................................24

VI.     GROUND FIVE: New Evidence (Confidential Informant)
        and Prosecutorial Misconduct.......................................................27

VII.    CONCLUSION.......................................................27

# TABLE OF AUTHORITIES

Pages(s)

CASES:

Barnett v. State,
  91 Hawaii 20, 979 P.2d 1046 (1999)....................1

Briones v. State,
  74 Haw. 442, 848 P.2d 966 (1993)..................14-15

Elmore v. Ozmint,
  661 F.3d 783 (4th Cir. 2011)..........................8

Evitts v. Lucey,
  469 U.S. 387 (1985)..................................15

Hurles v. Ryan,
  752 F.3d 768 (9th Cir. 2014).........................15

Kimmelman v. Morrison,
  477 U.S. 365 (1986)................................7-8

Nguyen v. Curry,
  736 F.3d 1287 (9th Cir. 2013).........................6

State v. Allen,
  7 Haw. App. 89, 744 P.2d 789 (1987)...................1

State v. Subia,
  139 Hawaii 62, 383 P.3d 1200 (2016)...................9

State v. Vaimili,
  135 Hawaii 492, 353 P.3d 1034 (2015)..................6

State v. Wallace,
  80 Hawaii 382, 910 P.2d 695 (1996)....................9

Strickland v. Washington,
  466 U.S. 668 (1984)............................6-7, 15

United States v. Tucker,
  716 F.2d 576 (9th Cir. 1983)..........................7

CONSTITUTIONAL PROVISIONS:

U.S. Const. amend. V....................................5

U.S. Const. amend. VI...............................5-6

U.S. Const. amend. XIV..............................5-6

Hawaii Const. art. 1, § 5...........................5-6

Hawaii Const. art. 1, § 14............................6


STATUTES:

H.R.S. § 635-56.......................................5

H.R.S. § 844D-121.....................................5


RULES:

Rule 40,
  Hawaii Rules of Penal Procedure......................1

Rule 602,
  Hawaii Rules of Evidence............................10

Rule 802,
  Hawaii Rules of Evidence.............................9


NEWSPAPER ARTICLES:

Rod Thompson, Charges dropped in Dana Ireland case,
Honolulu Star-Bulletin (October 21, 1998)
(http://archives.starbulletin.com/98/10/21/news/
story2.html).....................,....................12-13

Sophie Cocke, More than 600 rape kits collected
on the neighbor islands have gone untested,
Honolulu Star-Advertiser (October 2, 2016)
(http://www.staradvertiser.com/2016/10/02/
hawaii-news/few-neighbor-isle-rape-kits-tested).......21

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT
HILO DIVISION
STATE OF HAWAI'I

| | |
|---|---|
| ALBERT IAN SCHWEITZER,<br><br>Petitioner,<br><br>vs.<br><br>STATE OF HAWAI'I,<br><br>Respondent. | ) Case No. S.P.P. No. 17-1-0002<br>)<br>) VERIFIED AMENDED PETITION TO VACATE, SET<br>) ASIDE OR CORRECT JUDGMENT OR TO RELEASE<br>) PETITIONER ALBERT IAN SCHWEITZER FROM<br>) CUSTODY; MEMORANDUM IN SUPPORT OF<br>) VERIFIED AMENDED PETITION FOR POST-<br>) CONVICTION RELIEF; DECLARATION OF<br>) COUNSEL; EXHIBITS A-RRR; CERTIFICATE<br>) OF SERVICE<br>)<br>) CIRCUIT COURT OF THE THIRD CIRCUIT.<br>) HILO DIVISION<br>)<br>) THE HON. RIKI MAY AMANO<br>) THE HON. GLENN HARA |

## MEMORANDUM IN SUPPORT OF VERIFIED AMENDED PETITION FOR POST-CONVICTION RELIEF

Defendant Albert Ian Schweitzer petitions this Honorable Court to set aside his conviction and sentence on the grounds that the judgment (dated April 24, 2000) was obtained unlawfully and in violation of the Constitutions of the United States and of the State of Hawai'i, that there is newly discovered evidence, and that Defendant's potentially meritorious defense was substantially impaired by the ineffective assistance of counsel provided by Court-appointed trial court counsel James Biven and appellate counsel Peter Van Name Esser.

The Hawai'i Supreme Court has stated that "[a]s a general rule, a hearing should be held on a Rule 40 Petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true, the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true". Barnett v. State, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999) (quoting State v. Allen, 7 Haw. App. 89, 92-93, 744 P.2d 789, 792-93 (1987)).

1

I.    Factual Overview of the Case

On December 24, 1991, at about 4:10 p.m., the victim, Dana Ireland, left her boyfriend Mark Evans' house in the district of Puna on the Big Island to bicycle the nearly seven-mile ride to her sister, Sandy Ireland's home in Kapoho Vacationland. (Exhibit A, Sgt. Gabriel Malani report, 12/25/91, pp. 4-5 and Officer Richard Marzo report, 1/9/92, p. 5.) Dana Ireland took the Route 137, an uneven, twisting red-cinder road along the shoreline. Dana never arrived at Sandy's home in Kapoho Vacationland. The discovery of the damaged bicycle at the side of Kapoho Kai Drive and the presence of gouge marks in the red-cinder road led police to believe that Dana was struck from behind by a vehicle at the intersection of Kapoho Kai Drive and Ihilani Street, the entry road to Kapoho Vacationland. (Exhibit B, Officer R. Wagner report, 12/24/91, p. 1.) At approximately 6:00 p.m., Ms. Ireland herself was found, bruised and bleeding, off a remote, unpaved fishing trail five miles away from Kapoho Kai Drive, in rural Wa'a Wa'a. (Exhibit C, Officer H. Pinnow report, 12/24/91, pp. 1-2.) Ms. Ireland died at Hilo Hospital just after midnight on December 25, 1991. (Exhibit D, HPD Death Report, 12/25/91.)

For three years, police searched for a late-model <u>pickup truck</u>. Witnesses at the Kapoho Kai Drive scene described seeing a pickup truck at the intersection at the relevant time and a "short, dark" male and a young boy exiting the truck just before Ms. Ireland's bicycle was discovered. (Exhibit E, Detective J. Coloma report, 12/25/91, pp. 1-2 and Detective Robert Kualii report, 1/15/92, pp. 5-11.)

In June of 1994, Frank Pauline, Jr. (murdered in a New Mexico prison in April 2015, immediately after Big Island newspapers reported the involvement of HIP in the investigation of Mr. Schweitzer's post-conviction case), who was then imprisoned on Maui on unrelated drug convictions, "confessed" to police, claiming that he had been present during the commission of the crimes. In his first "confession", Pauline implicated the two Schweitzer brothers, Ian and Shawn Schweitzer. (Exhibit F, Pauline 06/19/94 Statement, p. 2.) Although Mr. Pauline denied taking part in the rape, he admitted to hitting Dana Ireland in the head with a tire bar with the intent to kill her. (Exhibit F, Pauline 06/19/94 Statement, pp. 6-7.) During his June 1994 statement, Mr. Pauline could not give a physical description of Dana, <u>could not recall if Dana "had a bike with her" and was unable to give the specific locations of crime scenes without the assistance of Detective Steven Guillermo who provided leading questions containing this information</u>. (Exhibit F, Pauline 06/19/94 Statement, pp. 3-5.)

2

Mr. Pauline gave police a second statement on April 22, 1995. (Exhibit G, Pauline 04/22/95 Statement.) Mr. Pauline stated that he had lied about hitting Dana over the head with a tire bar and that his half-brother, Wayne Gonsalves, was involved in Dana's rape and murder. (Exhibit G, Pauline 04/22/95 Statement, p. 6.) In his second statement, Mr. Pauline made no mention of Dana's bicycle and still could not provide a physical description of Ms. Ireland. (Exhibit G, Pauline 04/22/95 Statement, p. 5.)

Pauline had never had a relationship with the Schweitzers. (Exhibit H, Major Richard Carter report, 12/16/94, p. 1 and Detective Steven Guillermo report, 2/1/95, p. 3.) In fact, the Schweitzers had never previously been investigated as suspects in the case, prior to Mr. Pauline's statements. In exchange for his testimony at both Mr. Pauline's and Ian's trial, Pauline's half-brother John Gonsalves entered into an "Amended Change of Plea to a lesser included offense" on a drug charge and also was rewarded with the termination of his IRS money laundering investigation.[1] (Exhibit I, Indictment 11/10/93; Plea Agreement, 12/14/94). After Pauline was convicted at his trial, Gonsalves contacted the Prosecutor's Office and Detective Steven Guillermo regarding his entitlement to the reward, and also wrote to the Irelands directly seeking payment of their sponsored $25,000 reward. (Exhibit J, TR 02/02/00, pp. 211-217, 223-224, 226, Letter from John Gonsalves.) At this time undersigned counsel have no knowledge of whether Gonsalves actually received the $25,000 reward from the Irelands.[2]

With prosecutors facing growing public pressure as well as private pressure from Dana's family, on October 9, 1997, Ian Schweitzer and Shawn Schweitzer were indicted by a Third Circuit Grand Jury on charges of murder, rape and kidnapping. (Exhibit K, Grand Jury Indictment, 10/9/1997, pp. 1-2). On October 20, 1998, Charlene Iboshi, the lead prosecutor on the case, cited "new and unforeseen developments" as a basis to dismiss the charges against the Schweitzer brothers. (Exhibit L, Honolulu Star-Bulletin Article by Rod Thompson, 10/21/1998.)

The statute of limitations on the rape and kidnapping charges was to expire on June 1, 1999 (Exhibit L, Star-Bulletin Article by Rod Thompson, 10/21/1998). On May 5, 1999 (Exhibit

---

[1] On November 10, 1993, John Gonsalves (Pauline's half-brother) was indicted on the charge of Promoting a Dangerous Drug in the First Degree. (Exhibit I, Indictment 11/10/93.) On May 10, 1995, the circuit court granted John Gonsalves' Motion to Set Aside No Contest Plea.

[2] On February 2, 2000, Gonsalves testified that it was his decision to write the letter to the Irelands requesting the reward money, and that he still wanted the money "today" (Exhibit J, TR 02/02/2000, pp. 211-217).

M, Grand Jury Transcript, 05/19/1999, p. 165), just twenty-seven days before the statute of limitations on the non-murder charges was to expire, jailhouse informant Michael Ortiz made a claim to the prosecution that Ian had "confessed" to the charges to Mr. Ortiz. (Exhibit N, Trial Transcript, 02/03/2000, pp. 5-9.) Ortiz claimed that in August 1998, during recreational hours at Hawaii Community Correctional Center, Ian told Ortiz of his (Ian's) involvement in the kidnapping, rape and murder of Dana Ireland (Exhibit N, Trial Transcript, 03/03/2000, pp. 5-9.) Many of these details provided in Ortiz's testimony were available to the public through newspaper and television media and, of course, from the police. Using Mr. Ortiz's information, Ian and Shawn were re-indicted by a Third Circuit Grand Jury on May 20, 1999. (Exhibit O, Star-Bulletin Newspaper Article by Rod Thompson, 05/20/1999.)

In exchange for his testimony before and during Ian's trial, Mr. Ortiz was given unusual leniency; Mr. Ortiz was released from prison and the pending theft charges against him were never re-filed. (Exhibit P, TR 03/03/99; pp. 28-30, 39-41, 45-48.) At trial, appointed defense counsel James Biven asserted that Ortiz also received other favors in exchange for his cooperation, which Mr. Ortiz denied. (Exhibit P, TR 02/03/00; pp. 47-48.) During Ian's trial, prosecution investigator William Perriera acknowledged doing numerous favors for Ortiz, including moving his brother back to Hawaii, getting Ortiz certain requested items, and assisting Ortiz with shipping personal belongings from Minnesota to his mother in Hawaii.[3] (Exhibit Q, TR 02/09/00, pp. 91-96.)

The case was highly publicized throughout the nearly seven-year police investigation and throughout Frank Pauline's trial, which concluded less than four months before jury selection began in Ian's trial. Nearly every potential juror in Ian's trial acknowledged that he or she had read or watched media reports pertaining to the case. Despite having a jury pool influenced by heavy media coverage of the case, Judge Amano denied a defense motion for change of venue and the case was tried in Hilo.

Court-appointed defense counsel Biven provided ineffective assistance of counsel to Ian. Most significantly, Biven failed to thoroughly investigate, in order to identify percipient, objective and impartial witnesses whose testimony would have contradicted important aspects of the State's case, and would have supported Ian Schweitzer's position that he did not participate in

---

[3] The Petitioner notes that Detective William Perriera was called as a witness for the defense, not the prosecution.

any of the crimes charged in this case. On appeal, appellate counsel Peter Van Name Esser failed to raise, present or develop adequately to the Hawai'i Supreme Court several significant errors made by Biven that were essential to demonstrate that Biven had provided ineffective assistance of counsel. Thus, the Hawai'i Supreme Court affirmed Ian Schweitzer's judgment of conviction and sentence in a Summary Disposition Order on January 29, 2004 (No. 23465).

## II.     Ground One: Actual Innocence

Actual innocence, supported by multiple DNA test results conclusively excluding Ian Schweitzer, Shawn Schweitzer, and Frank Pauline, Jr. constitutes newly-discovered evidence which more than meets the standard for a new trial under Hawai'i and United States law. H.R.S. § 635-56 provides that:

In any civil case or in any criminal case wherein a verdict of guilty has been rendered, the court may set aside the verdict when it appears to be so manifestly against the weight of the evidence as to indicate bias, prejudice, passion, or misunderstanding of the charge of the court on the part of the jury; or the court may in any civil or criminal case grant a new trial for any legal cause.

H.R.S. § 844D-121 allows for the testing of DNA material at any time should there be any issue concerning the validity of a conviction. The section states:

Notwithstanding any other law or rule of court governing post-conviction relief to the contrary, a person who was convicted of and sentenced for a crime, or acquitted of a crime on the ground of physical or mental disease, disorder, or defect excluding responsibility, may file a motion, at any time, for DNA analysis of any evidence that:

(1) Is in the custody or control of a police department, prosecuting attorney, laboratory, or court; ...

(2) May contain biological evidence.

The newly discovered exculpatory DNA results entitle Ian Schweitzer to a new trial based on a miscarriage of justice on the independent grounds of H.R.S. § 635-56, in conjunction with H.R.S. § 844D-121, establishes that Ian Schweitzer's conviction and continued incarceration violate the guarantees of due process under Article 1, Section 5 of the Hawai'i State Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

## III.     Ground Two: Ineffective Assistance of Counsel

The Sixth Amendment right to effective counsel applies equally to both trial and

5

appellate counsel. Nguyen v. Curry, 736 F.3d 1287, 1293-94 (9th Cir. 2013). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 691–92 (1984).

In the present case, Ian Schweitzer's trial counsel and appellate counsel rendered constitutionally ineffective assistance, depriving him of rights secured by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, §§ 5 and 14 of the Hawai`i Constitution.

A. Ineffective Assistance of Trial Court Counsel

1. Under the Hawai`i Constitution

"When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice." State v. Vaimili, 135 Hawaii 492, 499, 353 P.3d 1034, 1041 (2015) (brackets in original; citation omitted).

2. Under the United States Constitution

The "proper standards for judging a criminal defendant's contention that the [United States] Constitution requires a conviction ... to be set aside because [trial] counsel's assistance [during] the trial or sentencing was ineffective" have been formulated by the United States Supreme Court in Strickland, 466 U.S. at 671.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

6

whose result is reliable.

Strickland, 466 U.S. at 687. Furthermore, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

3. Biven's ineffectiveness permeated his pretrial preparation, investigation, case theory and advocacy.

Perhaps the most important issue in this case was how the collision with Dana Ireland's bicycle occurred and what vehicle was involved in that collision. Quite simply, failure to tie Ian Schweitzer's Volkswagen to the crime would have made it difficult if not impossible for the government to tie Ian Schweitzer to the crime. Biven's ineffectiveness in all aspects of this case are manifestly exemplified by his failures to effectively represent Ian Schweitzer on these key defense points.

a. Failure to Investigate

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

The "adversarial testing process ... generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies .... " Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). "Pretrial investigation and preparation are the keys to effective representation of counsel. Courts have repeatedly stressed the importance of ... the interviewing of important witnesses, and adequate investigation of potential defenses." United States v. Tucker, 716 F.2d 576, 581 (9th Cir. 1983) (citations omitted). A "complete lack of pretrial preparation puts at risk both the defendant's right to an ample opportunity to meet the case of the prosecution, and the reliability of the adversarial

7

testing process." Kimmelman v. Morrison, 477 U.S. at 385 (citations and quote marks omitted). Further, in Elmore v. Ozmint, 661 F.3d 783, 851 (4th Cir. 2011), the Fourth Circuit Court of Appeals held that the defendant was entitled to habeas corpus relief because trial counsel's failure to investigate the State's forensic evidence was ineffective assistance of counsel.

Biven did not start his investigation on this complex, multi-defendant homicide until two months before the beginning of Ian's trial, more than two years after having been appointed. (See docket entries on funding requests, Exhibit QQQ.) By itself, in a case of this complexity, this is below the standard of care of a reasonably competent attorney. The investigation was rushed, limited and incapable of being followed up or expanded due to the self-imposed lack of diligence. But, with regard to accident reconstruction, the investigation bore fruit when James Campbell, the defense accident reconstruction expert, opined in a report that the Volkswagen was not involved in the collision. Inexplicably, in the starkest example of Biven's failure to sufficiently investigate or indeed even advocate, Biven failed to introduce this evidence by failing to question Campbell on his initial and supplementary report. In Campbell's supplementary report, Campbell stated that "[t]he injuries suffered by Ms. Ireland and the damage on the accident bicycle were possibly caused by a rear impact by a small pickup truck made between 1965 and 1975." (Exhibit HH, James Campbell Supplementary Report, 07/18/1999, p. 12.) Biven never raised this issue or introduced Campbell's report into evidence, nor did he question Campbell on any of the findings made in his Supplementary Report during his direct examination or re-direct examination of Campbell. Biven never asked Campbell about Campbell's theory that it was a small pickup truck that hit Dana Ireland, perhaps because it appears from the available materials that Biven, handicapped by a compressed investigation and limited time failed to study or understand Campbell's report. This conduct by Biven evidences a clear lack of pretrial preparation, which substantially compromised Ian Schweitzer's right to effective assistance of counsel.

Biven failed to properly investigate Ian's case in other areas. There is no evidence in the record that Biven personally interviewed any witnesses prior to trial or visited either of the crime scenes in order to substantiate witnesses' statements. Based upon his apparently limited understanding of what occurred at that trial, there is no evidence that Biven attended any day of Frank Pauline, Jr.'s trial, nor that Biven requested or reviewed the trial transcripts from the trial of Pauline, even though it ended less than four months before Ian's trial began.

b. Introduction of Inadmissible Hearsay Evidence and Unqualified Expert Opinion

As for hearsay, the general rule is that "[h]earsay is not admissible except as provided by these rules[.]" HRE Rule 802. "[T]estimony based on information supplied by another person that is not in evidence is inadmissible. The rationale is that the witness' knowledge is based on hearsay evidence and the trier of fact is unable to test the source's trustworthiness." State v. Subia, 139 Hawaii 62, 67, 383 P.3d 1200, 1205 (2016) (quoting State v. Wallace, 80 Hawaii 382, 411, 910 P.2d 695, 724 (1996)).

Starting with some of the first witnesses of the government's case, Biven allowed into evidence, without objection, testimony from multiple police and civilian witnesses regarding the accident scene, detrimental to his case, that were both impermissible hearsay and unqualified expert opinion. Accident reconstruction issues involving "acceleration marks," roadway "gouges," and the mechanics of the actual collision were presented against Ian Schweitzer's interests by unqualified witnesses while Biven sat and watched it happen.

1. Sergeant Robert Wagner:

Testified to hearsay of witness Richard Youman describing the accident scene prior to Wagner's arrival;

Testified to his opinion on roadside gravel marks, without expert qualification allowing the government to frame them as "acceleration marks."

Testified to his opinion on roadway "gouge" marks, without expert qualification.

2. Ricardo Wayne Hopkins (civilian scene witness):

Testified that the collision looked intentional;

Testified that the gravel marks indicated a vehicle "peeled out."

3. Damien Fiero (civilian child scene witness):

Testified to the nature of the "acceleration marks."

4. Anna Sherrel (civilian scene witness):

Testified to how she believed the accident had occurred.

5. Richard Trenda (civilian scene witness):

Testified to accident reconstruction issues.

Going beyond the accident reconstruction/vehicle issues, Biven's inability to differentiate admissible from inadmissible evidence effectively destroyed Ian Schweitzer's case.

Impermissible hearsay testimony was elicited from Detective Steven Guillermo and then-

9

Sergeant Robert Wagner relating to statements given by Eric Carlsmith and Corina Kaho'okaulana. Without objection, the State was allowed to elicit hearsay testimony from Detective Guillermo regarding: 1) all statements made by Carlsmith and Kaho'okaulana as to what they observed at the Kapoho Kai Drive scene on the day the crimes were committed and all subsequent statements; 2) Carlsmith's and Kaho'okaulana's description of the persons and vehicle they observed at the intersection; 3) the process and names of persons Carlsmith and Kaho'okaulana selected from subsequent photographic lineups; and 4) Carlsmith's and Kaho'okaulana's significant role throughout the police investigation in identifying and eliminating vehicles owned by persons on whom the police focused their investigation during the first three years after the incident.[4] (Exhibit R, TR 02/07/00, pp. 111-117.) Biven made no objections to such hearsay testimony and never called Carlsmith and Kaho'okaulana as witnesses.[5] (Exhibit R, TR 02/07/00, pp. 110-117.) The importance of their testimony as witnesses was undermined and diminished by the hearsay testimony elicited from Detective Guillermo and Sergeant Wagner. Carlsmith's and Kaho'okaulana's testimony would have been highly supportive of the defense that Ian was not present at the scene and that a Volkswagen was not involved in any way in the crimes against Dana Ireland. Their testimony would have presented the jury with a compelling set of facts completely contradictory to the State's case and contradictory to hearsay-within-hearsay testimony elicited from Detective Guillermo and elicited from Sergeant Wagner.[6]

---

[4] During the cross-examination of Sgt. Robert Wagner, attorney Biven on several occasions elicited impermissible hearsay testimony from Sgt. Wagner. (For example, "Now what did Eric Carlsmith tell you on what he observed in this area?" (Exhibit S, TR 01/24/00, pp. 86-89.))

[5] HRE Rule 602 states, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."

[6] A "mutually beneficial" agreement was made between the State and the defense attorney regarding "the proposed use of Detective Steven Guillermo at trial, for the purpose of eliciting hearsay testimony and evidence," prior to the testimony of Detective Guillermo during trial. This agreement is evidenced in a letter addressed to attorney Biven dated January 29, 2000, and was referenced at trial during several bench conferences. (Exhibit T, TR 02/07/00, p. 138, TR 02/08/00, p. 73.) In the letter, Deputy Prosecuting Attorney Lincoln Ashida requested a list of "witnesses whose proposed testimony or evidence [Biven] intend[ed] on eliciting through Detective Guillermo." (Exhibit T, Letter from L. Ashida to J. Biven, 01/29/00.) It is unknown what other testimony (besides the testimony of those mentioned) was on Biven's or the State's

c. Tire Castings

Police recovered evidence relating to tire tracks from both the Kapoho Kai Drive scene and Wa'a Wa'a scene.[7] During trial, Detective Steven Guillermo testified that that he noticed a "passenger or right [side] tire mark" by a gouge mark in the red-cinder road "30-something feet west" of where Ms. Ireland's bicycle was recovered at the Kapoho Kai Drive scene. (Exhibit U, TR 02/08/00, p. 10.) Police were unable to take measurements of the width between the tire tracks (from the inside of the left to the inside of the right tire) because police failed to preserve the scene so that by the next morning "that mark on the left-hand side was already gone."[8] (Exhibit V, TR 02/08/00, pp. 11, 13.) Police also recovered "a tire impression" from the Kapoho Kai Drive scene "by using a - using a plaster cast." (Exhibit W, TR 02/07/00, p. 105.) Detective Guillermo testified that police followed up on the "plaster casting on Kapoho Kai Drive" by going "to, uh, several tire outlets within Hilo... and eventually ended up at Western Auto... and upon looking at the plaster casting that we had [Mike Ferreira] indicated that that particular tire was sold by Western Auto." (Exhibit X, TR 02/07/00, p. 129.) Detective Guillermo also testified that the police took photographs, measurements and tire casts of noticeable tire tracks "approximately 40 feet east" of where "the victim was located" at the Wa'a Wa'a scene. (Exhibit Y, TR 02/07/00, pp. 104-106.)

Despite the police utilizing such tire impressions during the course of their investigation, the State elicited testimony from Detective Guillermo minimizing the significance of the tire

list of "proposed testimony or evidence" they intended to elicit through Detective Guillermo. The hearsay agreement made prior to Detective Guillermo's testimony could explain the lack of objections made by Biven to the State's elicitation of hearsay testimony from Detective Guillermo. However, regardless of what was agreed upon, allowing the State to elicit impermissible hearsay testimony of Carlsmith's and Kaho'okaulana's statements through Detective Guillermo's testimony without objection from Biven constitutes ineffective assistance of counsel.

[7] Detective Guillermo stated that police recorded the tire tracks "in the event that we did find a suspect vehicle...that could match up to the tire impression that is --- were left there." (Exhibit AA, TR 02/07/00, p. 104.)

[8] The Kapoho Kai Drive scene was not preserved overnight. (Exhibit V, TR 02/08/00, p. 12.)

track evidence.[9] Such statements made by the State through improper leading questions and elicited from Detective Guillermo were not objected to by Biven. (Exhibit Z, TR 02/07/00, pp. 106, 193.)

On cross-examination, Biven questioned Detective Guillermo about the significance of tire tracks in the course of the police investigation. (Exhibit DD, TR 02/07/00, pp. 193-195.) However, during his cross-examination, Biven never attempted to introduce evidence that the tire evidence collected from both scenes did not match the Volkswagen that the State claimed was the vehicle that struck Dana Ireland while she was on her bicycle. (Exhibit DD, TR 02/07/00, pp. 193-206.) This crucial evidence could have been elicited from Detective Guillermo but was not by Biven for reasons unknown. Thus, Biven's decision to not introduce into evidence statements elicited from Detective Guillermo or photographic evidence showing that the tire evidence collected at both scenes did not match the tires on the Volkswagen was not an exercise of reasonable professional judgment and constituted ineffective assistance of counsel.

### d. Ian's Re-Indictment

On October 20, 1998, the lead prosecutor for the State, Charlene Iboshi, told the court that due to "new and unforeseen developments" the State and Schweitzer, under Biven's counsel, agreed that the State would drop the charges with conditions attached.[10] Reports indicated that the State lacked DNA evidence linking Schweitzer to the crime.[11]

The Honolulu Star-Bulletin reported that the agreement between the State and Schweitzer stipulated that the State could re-file the charges by June 1, 1999, with the State able to request

---

[9] Detective Guillermo agreed that police used "those [tire] impressions . . . to exclude some vehicles." (Exhibit BB, TR 02/07/00, pp. 193-94.) However, Detective Guillermo also agreed to the State's leading questions that tire track evidence recorded at the Kapoho Kai Drive scene was collected "in an abundance of caution" and was "quite a distance from the scene." (Exhibit CC, TR 02/07/00, pp. 106.) ("Q: Again, it was quite a distance from the scene then? A: That is correct. Q: But in abundance of caution you had collected that evidence. A: Yes.")

[10] Court records from Ho'ohiki, Case ID: 3PC970000338, State of Hawaii v. Shawn A.K. Schweitzer, et al. (10/20/1998).

[11] Exhibit FF, Rod Thompson, Charges dropped in Dana Ireland case, Honolulu Star-Bulletin (October 21, 1998), accessed at: http://archives.starbulletin.com/98/10/21/news/story2.html (accessed on 12/22/2016).

additional time.[12] At the time, the charged sexual assault had a six-year statute of limitations. The statute of limitations was tolled from 10/9/1997 through 10/20/1998, during which period Schweitzer was under indictment and charged with raping Dana. Following the prosecution dropping the charges on 10/20/1998, the statute of limitations on rape and kidnapping had a new deadline of December 1998.[13] The agreement, however, between the State and Schweitzer, under Biven's counsel, extended the statute of limitations on rape to June 1, 1999.

There was no discernible tactical benefit for Biven to agree to extend the statute of limitations on the rape charge. Iboshi stated to the court that the charges had to be dismissed due to "new and unforeseen developments" - that the DNA evidence the State had collected from Ireland's hospital sheet did not match Schweitzer. No link evolved giving the State a basis for charging Schweitzer with any crime. Nevertheless, Biven advised Schweitzer to agree to extend the statute of limitations on the rape charge for an additional six months. No reasonably competent attorney would provide such advice to his client.

On May 5, 1999, just twenty-seven days shy of the expiration date of the agreement with Biven extending the statute of limitations on the rape charge, an inmate named Michael Ortiz came forward to the prosecutors and provided a statement claiming that in late August, 1998, while both Schweitzer and Ortiz were inmates at Hawaii Community Correctional Center in Hilo, Schweitzer "confessed" to Ortiz that he (Schweitzer) had been a part of the rape and murder of Dana Ireland.[14] Ortiz was the State's star witness in its case against Schweitzer when he testified to this claim on February 3, 2000. Ortiz came forward to the prosecution just before the *extended* statute of limitations on the rape charge would have expired. Had Biven not counseled Ian to agree to the State's terms back in October 1998, the sex assault offense could not have been charged. This serious miscarriage of justice requires a finding that Biven provided ineffective assistance of counsel with regard to his professionally indefensible agreement with the prosecutors.

---

[12] Exhibit FF, Rod Thompson, Charges dropped in Dana Ireland case, Honolulu Star-Bulletin (October 21, 1998), accessed at:
http://archives.starbulletin.com/98/10/21/news/story2.html (accessed on 12/22/2016).

[13] Then, as now, there was no statute of limitations on murder.

[14] Exhibit GG, Grand Jury TR, 05/19/1999, p. 165.

Biven's failures as trial counsel in this case demonstrated a pervasive lack of skill, judgment and diligence. He seemed simply in over his head from the start of the case to its conclusion. Biven agreed to represent Ian Schweitzer in a high publicity, sensational, complex, multi-defendant homicide without the background, training or ability to professionally complete the representation. His failures are demonstrable and self-admitted. This court should take Biven at his word when in a March 1998 court filing he stated that "... the task of preparing for the trial by myself has been more than I can handle." (See Exhibit RRR, Biven's declaration.) Ian Schweitzer suffered for this self-awareness.

        B.      Ineffective Assistance of Appellate Court Counsel

              1.     Under the Hawai`i Constitution

"The appellate court's purpose is to ensure defendant's right to a fair trial. Appellate courts neither find facts, except to determine if substantial evidence existed to support the trial court's conclusions, nor judge credibility, nor weigh the evidence. Nonmeritorious arguments or explanations are discarded without prejudicial effect. Moreover, appellate courts may dispense with oral argument at their discretion. As such, it is counsel's responsibility, in the limited time and space allowed, to present issues that may have influenced the trial court's decision adversely to his or her client. Our focus, therefore, is not upon the possible, or even probable, influence appellant's counsel's actions had on the appellate court, but, instead, we center on whether counsel informed him or herself enough to present appropriate appealable issues in the first instance." Briones v. State, 74 Haw. 442, 465, 848 P.2d 966, 977 (1993).

"An 'appealable issue' is an error or omission by counsel, judge, or jury resulting in the withdrawal or substantial impairment of a potentially meritorious defense [15]. Every appealable issue is not required to be asserted. The page limitation on the appellate briefs and the dictates of effective appellate advocacy compel appellate counsel to advance a limited number of key issues." Briones, 74 Haw. at 465-66, 848 P.2d at 977-78.

"If an appealable issue is omitted, then both the issues actually presented on appeal as well as those omitted are evaluated in light of the entire record, the status of the law and, most importantly, counsel's knowledge of both. Counsel's scope of review and knowledge of the law

---

15 If "appellate counsel was precluded from raising an issue on appeal because trial counsel failed to preserve that issue for appellate review, that issue is not an 'appealable issue.'" Briones, 74 Haw. at 466 n.14, 848 P.2d at 977-78 n.14.

are assessed, in light of all the circumstances, as that information a reasonably competent, informed and diligent attorney in criminal cases in our community should possess. Counsel's informed decision as to which issues to present on appeal will not ordinarily be second-guessed. Counsel's performance need not be errorless. If, however, an appealable issue is omitted as a result of the performance of counsel whose competence fell below that required of attorneys in criminal cases then appellant's counsel is constitutionally ineffective." Briones, 74 Haw. at 466-67, 848 P.2d at 978.

"Violation of an accused's constitutional right to effective assistance of counsel warrants the irrebuttable presumption of prejudice. A conviction will be reversed, therefore, if the defendant was denied effective assistance of counsel ... on appeal." Briones, 74 Haw. at 467, 848 P.2d at 978.

## 2. Under the United States Constitution

"A criminal defendant enjoys the right to the effective assistance of counsel on appeal." Hurles v. Ryan, 752 F.3d 768, 785 (9th Cir. 2014) (citing Evitts v. Lucey, 469 U.S. 387, 391-97 (1985)). The standard for judging a criminal defendant's claims of ineffective assistance of appellate counsel is the same standard set forth by the United States Supreme Court in Strickland, 466 U.S. 668 (1984), namely, a criminal defendant "must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." Hurles, 752 F.3d at 785.

In the present case, appellate counsel Peter Van Name Esser failed to satisfy the minimum requirements of effective assistance of appellate counsel under the Hawai`i and United States Constitutions. He failed to preserve, raise, and/or properly present Hawai`i or United States constitutional claims entitling Ian Schweitzer to relief from his convictions. Such claims include, among others, Esser's failure to raise Biven's ineffectiveness in: 1) failing to call key witnesses Eric Carlsmith and Corina Kaho`okulana; 2) failing to interview potential alibi witnesses; 3) failing to object to the impermissible hearsay testimony; and 4) failure to thoroughly investigate.

On appeal, Esser raised the issues of : 1) (Denial of) Motion for Change of Venue; 2) Jury Instructions; 3) Volkswagen Not Admitted Into Evidence; 4) Ineffective Assistance and Prosecutorial Misconduct. (Exhibit II, Appellate Opening Brief (OB) at 31-36.) Specifically,

15

Esser argued: 1) "after eight years of publicity, and three months of saturation media during Pauline's trial and conviction for the same crimes, the juror voir dire confirmed that Ian could not get an unbiased jury on the Big Island"; 2) "the [trial] court did not adequately address included offenses of murder and sexual assault, and improperly denied a timely request for an EMED manslaughter instruction"; 3) "the star piece of physical evidence in the case - the yellow Volkswagen in the courthouse basement - was never identified, authenticated, introduced or admitted into evidence"; 4) "this [appellate] court should vacate [Ian's] convictions because the combination of ineffective assistance [of counsel] and prosecutorial misconduct denied Ian a fair trial in this case." (Exhibit JJ, OB at 36-50.) Although Esser raised these issues on appeal, he did so inadequately, incompletely, and with insufficient support from the record. His presentation to the Court was superficial and conclusory.

3. Misrepresentation of Facts

Most significantly, Esser provided ineffective assistance of appellate counsel by misrepresenting points which were false in his opening brief to the Hawai'i Supreme Court. He committed gross error by making a false and unsubstantiated incriminating assertion that **"Ian was the driver."** (Exhibit KK, OB at 49, bold typeface added.) The surrounding sentences in that paragraph of his brief show the intention of that misstatement to identify a distinguishing factor in comparing Ian's case to Pauline's case. However, Ian always maintained, and he does so to this day, that he was not the driver of any vehicle that collided with Dana Ireland. The incriminating nature of this erroneous assertion by Esser undermined the entirety of Ian's appeal. Esser may have meant to say "Ian was accused of being the driver," to distinguish Ian's trial from Pauline's, but this error was by no means harmless. This grave invalid choice of words defaulted into an admission that was never made by the Petitioner, Albert Ian Schweitzer.

4. Hearsay Testimony

Regarding the hearsay testimony, Esser did present to the Hawai'i Supreme Court the issue of hearsay statements elicited from Detective Guillermo. (Exhibit LL, OB at 46.) However, Esser's general assertion of hearsay, consisting of one paragraph referring to the "Statement of the Case" for specific statements of hearsay, failed to apprise the Hawai'i Supreme Court of the magnitude of Biven's ineffectiveness pertaining to the unchallenged admission of

damaging hearsay testimony.[16]

In generalizing the hearsay elicited from Detective Guillermo in his Opening Brief, Esser failed to specifically present to the Hawai'i Supreme Court that Biven failed to call key eyewitnesses Eric Carlsmith and Corina Kaho'okaulana, who were near the collision site, when these witnesses were present at Kapoho Vacationland and could have testified that the vehicle which struck and was used to abduct Dana Ireland was a small, older truck, not a Volkswagen Bug. Carlsmith and Kaho'okaulana told police that they witnessed a "gray" Datsun pickup truck parked at the Kapoho Kai intersection and described its occupants as a "local" male and a "young boy" who was "probably 9 or 10 years old." (Exhibit NN, TR 02/07/00, volume 2, p. 112.) Police used Carlsmith's and Kaho'okaulana's statements to drive their initial investigation and for more than three years.[17] After Carlsmith and Kaho'okaulana identified possible suspects from several photographic lineups, police searched unsuccessfully for the pickup truck, the male suspect and the young boy for nearly four years. Only after Frank Pauline, Jr.'s false and incentivized "confession" in 1994 did the police turn their investigation away from a pickup truck based on Carlsmith and Kaho'okaulana's eyewitness accounts on December 24, 1991.

### 5. Ian's Re-Indictment

Esser failed to provide constitutionally required assistance of appellate counsel by not raising on appeal, the issue of Biven agreeing with the State to extend the statute of limitations by an additional six months on the charge of sexual assault.

### 6. Failure to Investigate

Esser failed to present to the Hawai'i Supreme Court that Biven failed to thoroughly and competently investigate the facts of Ian's case.

---

[16] In the "Statement of the Case" contained in his Opening Brief, Esser argued that, "Guillermo restated and explained the testimony of virtually every witness, and quoted others never called. The prosecutor elicited hearsay with leading questions and Guillermo supplied it." (Exhibit MM, OB at 27.) In a footnote, Esser lists a number of different hearsay statements elicited from Detective Guillermo, without reference as to who said such statements and the context in which such statements were said. (Exhibit MM, OB at 27, n.48.) The apparent randomness of the hearsay statements elicited from Detective Guillermo that were selected by Esser was ineffective in conveying the significance of such statements.

[17] During trial, Detective Guillermo agreed that police "would be trying to develop the information given to [them] by [Carlsmith and Kaho'okaulana]" (Exhibit NN, TR 02/07/00, volume 2, p. 112).

IV.   Ground Three: New Evidence (DNA)

A. DNA issue 1:

Because of scientific advancements in the testing and efficacy of DNA analysis, there is now a need for retesting of evidence found at the Wa'a Wa'a crime scene and at the hospital to determine if collected DNA profiles - all of which are currently unidentified - are from a single male donor or multiple donors. The materials to do this were requested by HIP from the Hawai'i County Prosecutor and the Hawai'i County Police Department over several months beginning in October 2015 and into several months in 2016. The Hawai'i Police Department, through now Major Wagner and Officer Grant Todd, returned the necessary materials to HIP on December 5, 2016. However, they failed to return one key exhibit, the pubic hairs and debris, and the comb used to retrieve the pubic hairs from Ms. Ireland. They have not returned that exhibit as of the date of this filing.

B. DNA issue 2:

There is a need for comparison of DNA profiles obtained with the State of Hawai'i database, including an unidentified DNA profile found from Dana Ireland's vaginal swab and gurney sheet. The materials to do this were requested by HIP from the Hawai'i County Prosecutor and the Hawai'i County Police Department over several months beginning in October 2015 and into several months in 2016. The Hawai'i Police Department, through now Major Wagner and Officer Grant Todd, returned the necessary materials to HIP on December 5, 2016. However, they failed to return one key exhibit, the pubic hairs and debris, and the comb used to retrieve the pubic hairs from Ms. Ireland. They have not returned that exhibit as of the date of this filing.

C. DNA issue 3:

There is a need for retesting DNA from previous suspects in the case based on the availability of new and more refined and sophisticated testing methods. (No DNA samples were preserved from suspects, so new samples from each person initially suspected must be obtained.)

D. DNA issue 4:

The bloody Jimmy-Z t-shirt, claimed by the Prosecution during the Petitioner's trial to have been worn by Frank Pauline, Jr. (Exhibit OO, Testimony by Lynn Matthews, 1/27/2000, pp. 90-92; Testimony by Charla Figueroa; 1/27/2000, pp. 131-134; Testimony by Steve Dearing, 1/27/2000, pp. 150-152) was finally tested in 2007 and revealed that neither the DNA profile obtained from the blood, nor the sweat from the shirt, matched the DNA of Mr. Pauline. (New

evidence – again excluding all three original defendants: Frank Pauline, Jr., Albert Ian Schweitzer and Shawn Schweitzer.) The unknown DNA profile found on the Jimmy-Z t-shirt is the same as the DNA profile found on the vaginal swab and gurney sheet.

E. Supporting Statement

Previous DNA testing conducted by Forensic Analytical (1999), ReliaGene (2007) and Orchid Cellmark (2008) have excluded Albert Ian Schweitzer, Shawn Schweitzer and Frank Pauline, Jr., as contributors of any DNA recovered in connection with the murder of Dana Ireland. (See Exhibit PP, Forensic Analytical, Jan. 25, 1999; Exhibit QQ, ReliaGene, Dec. 21, 2007; Exhibit RR, Orchid Cellmark, Oct. 29, 2008.) Forensic Analytical conducted DNA testing on physical evidence between 1998 and 1999 at the request of Big Island DPA Charlene Iboshi, the co-prosecutor of Pauline and the Schweitzers. On January 25, 1999, Lisa Calandro of Forensic conducted her examination and evaluation of the DNA extracts and concluded that the DNA profiles from the fractions of Dana's vaginal swab and exam sheet from the hospital gurney were from the same male, and excluded Pauline and the Schweitzers. (See Exhibit PP, Forensic Analytical Lab Report, 1999, p. 8.)

On February 26, 2007, in order to obtain male DNA profiles through updated testing methods, Petitioner and the State filed a Stipulated Order with the Third Circuit Court establishing procedures for the proper handling and testing of various items of evidence then in the possession of the Hawaii County Prosecuting Attorney's Office ("HPA") and the Hawaii Police Department ("HPD" or "Big Island"). Pursuant to that stipulated order, the following items of evidence collected during the investigation phases of State of Hawaii v. Albert Ian Schweitzer, Cr. No. 99-147, were documented, packaged and sent to the former ReliaGene Laboratory (now known as Bode Cellmark) for DNA testing on April 2, 2007: (1) Rape kit from Dana Ireland collected at Hilo Hospital; (2) Light blue hospital sheet from Dana Ireland's gurney at Hilo Hospital with stains; (3) Blue "Jimmy Z. T-shirt" found at the Wa'a Wa'a road scene; (4) Dana Ireland's panties; (5) Men's large red underwear collected at the Wa'a Wa'a scene; and (6) Male pubic hair samples and comb. This was the first time the Jimmy-Z t-shirt was tested. Based on the testing available at that time, the only evidence from which a DNA profile could be obtained was the Jimmy-Z t-shirt. (See Exhibit QQ, ReliaGene, Dec. 21, 2007, pp. 4-5.) A subsequent comparison between the DNA profile taken from the Jimmy-Z t-shirt and Albert Ian Schweitzer's DNA by ReliaGene's successor Orchid Cellmark (now Bode Cellmark), excluded

him as being the donor. (See Exhibit RR, Orchid Cellmark, Oct. 29, 2008, pp. 1-2.) The Jimmy-Z t-shirt profile also does not match the DNA profile of Frank Pauline, Jr. (Exhibit PP, Forensic Analytical Lab report, Jan. 25, 1999, p. 11; and Exhibit RR, Orchid Cellmark, Oct. 29, 2008, supplemental report of Lab Examination.)

Subsequently, on February 27, 2014, the Petitioner received DNA test results from Orchid Cellmark (now Bode Cellmark) of the sperm fractions on the pubic hair left behind by the perpetrator and from Dana's panties, which again excluded Albert Ian Schweitzer, Shawn Schweitzer, and Frank Pauline, Jr. as contributors of DNA in the case. (See Exhibit SS, Cellmark Forensics Report of Lab Examination, Feb. 27, 2014, pp. 3-4.) Petitioner then sought to have the new DNA results compared with DNA profiles contained in the FBI's CODIS law enforcement databases, as well as those previously collected in this case, to identify the actual perpetrator(s). Unfortunately, the DNA profile resulting from the testing by Orchid Cellmark of the evidence was not eligible for CODIS upload because Orchid Cellmark had not obtained re-certification under the new FBI CODIS certification requirements. Due to Orchid's inability to compare the 2014 DNA results with the DNA profiles in CODIS, Petitioner Albert Ian Schweitzer sought to have the DNA re-tested by a CODIS-certified lab, and thus contacted C. Alan Keel of Forensic Analytical Sciences, Inc., in Hayward, California, to determine whether DNA extracts were preserved from prior DNA testing of this evidence.

On April 4, 2016, Keel conveyed to Petitioner's counsel that he had located the DNA extract tubes retained by Forensic, and shortly thereafter, Nancy Dinh of Forensic confirmed to Keel that there was adequate DNA available from the sperm fraction of the vaginal swab and sheet to pursue further analysis, including possible CODIS upload. Petitioner's counsel gave their approval for additional DNA testing . DNA testing was conducted by Keel at Forensic and completed in April 2016. The results again excluded all three defendants, including Albert Ian Schweitzer, and were sent by Keel to be uploaded into CODIS. In July 2016, Mr. Keel forwarded his report and data on the unknown male profile to CODIS-accredited Acadiana Criminalistics Laboratory in New Iberia, Louisiana, for review and upload to CODIS. On July 25, 2016, Petitioner's counsel were informed by Carolyn Booker, the Acadiana CODIS Administrator, that the profile had been uploaded to the FBI database, searched nationally, and there were no matches. (Exhibit TT, E-mail from Carolyn Booker, July 25, 2016.)

That there were no matches is not entirely surprising, as the Hawaii County and City and County of Honolulu Police Departments uploads of DNA profiles into the national CODIS database have been infrequent and severely backlogged. In a 2016 report to the State of Hawaii Department of the Attorney General, the Honolulu Police Department disclosed that out of 1,512 sexual assault kits in its inventory, it had only tested 137 of them. The kits dated back to the 1990s. Specifically on the Big Island, the report stated that police tested just 16% of all rape kits submitted to the Hawaii Police Department between 2001 and June 2016.[18] The results from rape kits are supposed to be uploaded into a federal CODIS database in order to assist in identifying serial rapists, closing cold cases and catching criminals who cross state lines. Both processes, rape kit testing and subsequent CODIS uploading, are greatly backlogged, which impedes Petitioner's efforts to accurately match the unidentified male profile from the Ireland crime scene and hospital gurney bed sheet to the actual perpetrator.

Dr. David Haymer, Professor of Cell and Molecular Biology at the John A. Burns School of Medicine at the University of Hawaii, confirmed that the DNA profiles taken from the Ireland vaginal swabs, the gurney exam sheet, and the Jimmy-Z t-shirt can be identified as coming from one single male (and again excluding all three defendants). (Exhibit UU, Declaration of Dr. David Haymer). The most recent report by Cellmark Forensics in 2014 indicated the sperm fractions on the pubic hair found on the victim and the male DNA from her panties are also from a single source. (See Exhibit SS, Cellmark Forensics, Feb. 27, 2014, p. 4.) A more thorough assessment of the DNA profiles must be made to confirm that all of these profiles come from the same donor. The most recent testing was done through Y-STR strand testing (See Exhibit SS, Cellmark Forensics), while the other two were done by regular ID-STR testing (see Exhibit PP, Forensic Analytical, 1999; Exhibit RR, Orchid Cellmark, 2008.) This makes a direct comparison between the two profiles impossible. However, additional testing of the DNA profile of one of the three previously mentioned items of evidence, the Jimmy-Z t-shirt, the gurney sheet or the vaginal swabs taken from Dana Ireland at the hospital, will confirm or negate the presence of a single perpetrator. In addition, the use of the most up-to-date DNA testing techniques opens renewed matching capabilities. (Exhibit UU, Declaration of Dr. David Haymer.)

[18] Sophie Cocke. "More than 600 rape kits collected on the neighbor islands have gone untested." Honolulu Star-Advertiser. October 2, 2016. http://www.staradvertiser.com/2016/10/02/hawaii-news/few-neighbor-isle-rape-kits-tested/

Petitioner's counsel first contacted HPA Mitch Roth on October 28, 2015, requesting retesting be done so that the DNA profiles from the actual perpetrator in the Dana Ireland case be compared to all Hawaii and federal CODIS databases to determine the identity of the perpetrator (Exhibit VV, Letter to Mitch Roth, October 28, 2015.) On January 5, 2016, Mr. Roth mailed a letter to Chief Harry S. Kubojiri of the HPD, to inform him of Petitioner's request, and asked the HPD to determine whether the HPD still possessed the evidence it obtained from Orchid Cellmark via Federal Express on September 25, 2015. (Exhibit WW, Roth Letter to HPD, January 5, 2016.) No response was received by Petitioner's counsel. On March 14, 2016, Mr. Brook Hart of the Hawaii Innocence Project (HIP) spoke to Mr. Roth and the HPD Captain in charge of evidence, Robert Wagner, via telephone conference. (Exhibit XX, Declaration of Brook Hart, January 17, 2017, referring to HIP telephone conference, March 14, 2016.) Captain Wagner happened to be a beat officer in the crime scene area on December 24, 1991, the day Dana Ireland was attacked. Captain Wagner said that he was going to provide HIP with a list of items from this case "within a reasonable amount of time." (Exhibit XX, Declaration of Brook Hart, January 17, 2017, referring to HIP telephone conference, March 14, 2016.) During the phone conference, Captain Wagner stated that he believed that "the evidence may be degraded and not of any value for testing at this time." (Exhibit XX, Declaration of Brook Hart, January 17, 2017, referring to HIP telephone conference, March 14, 2016.) Petitioner's counsel are very concerned about this statement. On March 16, 2016, Petitioner's counsel requested confirmation from HPD (within 60 days of HPD's receipt of the request by Petitioner's counsel) that all of the evidence from the ongoing Albert Ian Schweitzer case has been properly retained and stored. (Exhibit YY, HIP Letter to HPD, March 16, 2016.) After receiving no response from Mr. Roth or any HPD officer, Petitioner's counsel sent another letter to Chief Kubojiri on June 22, 2016, to reiterate HIP's request. (Exhibit ZZ, HIP Letter to HPD, June 22, 2016.) On July 11, 2016, Chief Kubojiri responded that the items returned to HPD from Bode Cellmark (formerly Orchid Cellmark) "were re-packaged and no longer directly correspond with our property receipts." (Exhibit AAA, letter from HPD to Hawaii County Prosecuting Attorney Mitchell Roth.) No additional information or confirmation was provided. On November 4, 2016 – more than one year after HIP's initial request – Petitioner's counsel sent another letter to Chief Harry S. Kubojiri of the Hawaii Police Department, urging him to provide the HIP attorneys with a list of the evidence in HPD's possession from the Dana Ireland case. (Exhibit BBB, HIP Letter to HPD,

November 4, 2016.) Moreover, they requested that the police ship particular items to a CODIS-certified lab technician, C. Alan Keel, to have Mr. Keel assist in doing the testing that Petitioner was seeking to accomplish. (See Exhibit BBB, HIP Letter to HPD, November 4, 2016.)

After receiving no response from the Hawaii Police Department, several members of the HIP team, and the co-director of HIP, traveled to the Big Island on November 11, 2016, and proceeded to the police station to request a visual confirmation of the existence and condition of the evidence in the Dana Ireland case. The HIP team was informed by Officer Alan Kimura that because it was Veterans Day, there was no one in charge of the evidence locker, nor did any other person at HPD have access to the locker. The team members left a note for Captain Wagner (Exhibit CCC, HIP Letter to HPD, November 11, 2016), who responded on November 16, 2016, that he needed to seek approval from Chief Kubojiri to send any evidence to C. Alan Keel. (See Exhibit DDD, E-mail from Captain Wagner to HIP, November 16, 2016.) On November 18, 2016, Captain Wagner wrote to Mr. Brook Hart that HPD would send the requested materials to Mr. Keel by the end of the following week – the week of November 25, 2016. (See Exhibit EEE, E-mail from Captain Wagner to HIP, November 18, 2016.) Except for the critically important **Dana Ireland pubic hair evidence and comb**, HPD finally complied with the request to send the evidence to C. Alan Keel on December 5, 2016. (Exhibit FFF, E-mail from HPD to Keel, December 5, 2016.) The HPD did not send the pubic hair and comb evidence that it had in its possession at least since September 25, 2015.

On December 10, 2016, HIP emailed Detective Grant Todd of the Hawaii Police Department to notify him that a piece of physical evidence, a pubic hair comb and combings, was not among the items of evidence that he sent to Forensic Analytical on December 5, 2016. This piece of evidence is crucial as previous DNA testing has resulted in a partial male profile, which may reveal the true perpetrator of this crime. The pubic hair comb and combings were among several of the items that HIP specifically requested to be sent to Forensic Analytical in HIP's prior correspondence with Prosecuting Attorney Mitch Roth, Police Chief Harry Kubojiri and Captain Robert Wagner. These items of evidence were precisely listed as "OC# RG 08-0037-09.01 Comb: Pubic Hair - Dana Ireland (506438) F001779/07-03054" in the Fed Ex/Orchid Cellmark inventory of items delivered to the Hawaii Police Department via Federal Express on September 25, 2015. On December 10, 2016, HIP sent an email requesting Detective Todd to immediately investigate the current status of that specific evidentiary item of pubic hair comb and combings.

After receiving no response from Detective Todd, HIP re-sent him the December 10, 2016, email on December 15, 2016. HIP still has not received a response from Detective Todd regarding the status of this missing piece of evidence.

In order to identify the actual perpetrator(s), HIP is also requesting assistance from the Hawaii Attorney General's office to compare the male DNA profile from the Dana Ireland case to existing profiles in the State's database. Since the State of Hawaii is heavily backlogged in uploading DNA profiles for convicted felons into the federal CODIS database, it is possible that the perpetrator(s)' DNA is on file locally. However, the materials collected from possible suspects between 1991 and 1999 in connection with the Dana Ireland case were not preserved. Furthermore, the previous DNA exculpations of the additional potential suspects were based on the old polymarker method of testing DNA and are now obsolete. (See Exhibit UU, Declaration of Dr. David Haymer.) Because the DNA samples from possible suspects were not preserved, previous suspects' exclusions are obsolete, and no match was obtained in the national CODIS system, Petitioner's counsel must obtain new DNA samples from the list of suspects. As soon as this DNA is properly collected, to ensure the chain of custody, the material must then be sent to the Forensic Analytical Sciences, Inc. Laboratory to be processed, at which point these profiles will be compared to the DNA profile arising from the evidence found at the crime scene and at the hospital. For the Petitioner, and for the fair administration of justice, it is of utmost importance to identify the actual perpetrator(s) of the Dana Ireland kidnapping, rape and murder.

V.     Ground Four: New Evidence (Accident Reconstruction/Junk Science)

On February 7, 2000, Kenneth Baker, then-Director of the Investigation Division at the Traffic Institute in Illinois, testified at trial for the State in the Schweitzer case. (Exhibit GGG, TR, 2/7/2000, p. 4.)  Baker testified that a full-sized truck with a square-shaped frontal area (versus a curved frontal area) could not have been the vehicle that struck Dana Ireland. (Exhibit HHH, TR, 2/7/2000, p. 24.) Furthermore, he testified that the vehicle that did hit Dana Ireland had to have had a rounded-face bumper that was approximately 4 inches in vertical section with the bottom edge approximately 12 inches above the ground. (Exhibit III, TR, 02/07/200, p. 15.)

In 2015, HIP retained an independent collision reconstruction expert, Clyde Calhoun, to review the testimonies of both the prosecution and defense experts on the incident reconstruction in this case. Mr. Calhoun has been a professional collision reconstructionist and automobile crash investigator since 1980, and his company, Technical Consulting Services, has been

employed by numerous other attorneys and insurance companies. Mr. Calhoun has testified under oath as an expert witness in multiple trials and other legal proceedings. (Exhibit JJJ, Calhoun CV, updated 2016.) In Mr. Calhoun's report (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 1), he asserted that Baker's theory was based on false scientific calculations.

To begin, Baker calculated the distance of the bottom edge of the bumper to the ground to detect how high the center of the bumper would have been when the vehicle struck Dana Ireland's bicycle from behind. During direct examination of Baker, the prosecutor asked why the measurement was relevant. Baker testified that the measurement is what "defines how high up off of the roadway the object that hit the back of the bicycle would have had to have been." Baker continued, "If that measurement was say 20 inches, then I would look for ... a bumper that was mounted 20 inches off the ground. So I'm using that as a rule to look for the type – the particular types of vehicles." (Exhibit LLL, TR, 2/7/2000, volume 1, p. 18.) When asked about the 12-inch measurement he had made, Baker testified, "it would be from the ground up to the bottom of the bumper." (Exhibit MMM, TR, 2/7/2000, volume 1, p. 18.)

The vehicle that was used in the prosecution's theory was a 1953/4 Volkswagen Bug ("VW Bug"). Baker measured the VW Bug's bumper from the ground and testified that the measurement was approximately 13-14 inches, but if the VW Bug were slightly lower to the ground, the bottom edge of the bumper would reach 12 inches. (Exhibit MMM, TR, 2/7/2000, volume 1, p. 18.)

The VW Bug has a front bumper center height of approximately 12.6 inches when unloaded (empty of people or things) (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 1.) In order for the prosecution's theory to work, the VW Bug would have had to hit Dana Ireland with no one sitting inside the car. The prosecution, however, insisted that there were at least three men, Frank Pauline, Jr., Shawn Schweitzer, and Albert Ian Schweitzer, inside the VW Bug, when the VW Bug hit Dana Ireland. (Exhibit NNN, TR, 1/24/2000, pp. 21-22, 27). The weights of the three men combined totaled approximately 600+ pounds. (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 1.) With this presumed additional weight inside the VW Bug, the front bumper center height would have been approximately 10.6 inches (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 1), almost 2 inches lower than what Baker testified was the height of the bumper *from the bottom edge of the vehicle that collided with the rear of Dana Ireland's bicycle.*

Furthermore, Baker used false methodology to determine that the car in question had a rounded-face bumper. Baker testified that "the damage to the back of the wheel of the bicycle indicates that ... [the car was] maybe curvilinear or curved in shape as opposed to something that's like a flat surface like a full-size van or a truck...." (Exhibit OOO, TR, 2/7/2000, p. 24.) Baker (and trial counsel Biven) failed to consider a third option – that of a small, early model (pre-1980), foreign-made pick-up truck (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 2), which would be consistent with evidence of the impact that caused Dana Ireland's bicycle to be run over.

Therefore, Baker's calculations were incorrect because his methodology to ascertain the height of the vehicle was wrong by looking at the bottom edge of the front bumper rather than the center of the vehicle's bumper. Even if Baker's methodology was correct, the fact that the VW Bug's center height stands at 10.6 inches with a presumed additional weight of 600+ pounds inside the vehicle shows that Baker's calculations were incorrect. That would have naturally excluded the VW Bug as the impact vehicle because Baker was looking for a vehicle with a bottom edge front bumper height of 12 inches. Additionally, Baker did not consider the option that the vehicle that hit Dana Ireland was more consistent with a small, foreign-made pick-up truck, rather than a VW Bug. Excluding the VW Bug based on its height, the evidence, therefore, only fits the description of a small, foreign-made pick-up truck, an important factor that Baker neither considered nor explained in his testimony. Most important, Biven did not address this circumstance, and by failing to do so rendered ineffective assistance of counsel.

Furthermore, the impact described by the State would have left damage on the bumper of the VW Bug, as well as leaving hood brow scratches, hood scuff marks, and sheet metal cowl deformation, among other damages to the front of the car. (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 2.) There was no damage to the VW Bug consistent with such an impact as theorized by the prosecution. Similarly, the tire track casts from the vehicle/bicycle collision area do not match the tires of the VW Bug, as the tire track casts are much larger than the VW Bug's tires. (Exhibit KKK, Report of Clyde Calhoun, 1/15/2017, p. 2.) Nor did trial counsel Biven competently examine into these circumstances or raise these issues as Petitioner's trial counsel.

Appellate counsel, Peter Van Name Esser, did not provide effective assistance of appellate counsel when describing the trial counsel, James Biven's, ineffective assistance of counsel. In a very short description, Esser mentioned that the defense accident reconstruction expert used by Biven, James Campbell, only testified for ten minutes, calling it "baffling and utterly inadequate." (Exhibit PPP, OB, 12/20/2000, p. 50.) Esser failed to provide any further details of how the ten minutes of Campbell's testimony was "utterly inadequate." Indeed, Esser did not even mention Biven's ineffectiveness and incompetence in cross-examining the State's expert witness, Kenneth Baker.

VI.     Ground Five: New Evidence (Confidential Informant) and Prosecutorial Misconduct

A confidential informant has come forward with important information relating to this case. However, the confidential informant fears for his/her life and has declined to further cooperate with HIP until certain measures are taken to assure his/her safety. HIP is working towards taking steps to assure the confidential informant's safety.

VII.    Conclusion

This case is unusual in that Petitioner is actually, factually innocent of these crimes. This Petition is based on the newly discovered exculpatory DNA results obtained as a result of Court-ordered independent testing, improved techniques in crash reconstruction, ineffective trial and appellate counsel, and important information from a confidential informant. However, further DNA testing with the latest methods is required with the evidence that was sent by the Hawaii Police Department to the independent Forensic Analytical Laboratory. It appears that Petitioner's trial and appellate counsel committed basic errors that would entitle him to a new trial based on the claim of ineffective assistance.

Thus, Petitioner Ian Schweitzer is entitled to a new trial in the interests of justice on the basis of the facts and circumstance set forth herein and above.

Wherefore, Petitioner prays that the Court grant him all relief to which he may be entitled in this proceeding.

For the foregoing reasons, Petitioner urges this court to grant his Petition for Post-Conviction Relief.

DATED: Honolulu, Hawaiʻi, January 15, 2018.

HAWAIʻI INNOCENCE PROJECT

by: _____
BROOK HART, #723

_____
WILLIAM A. HARRISON, #2948

Attorneys for Petitioner
ALBERT IAN SCHWEITZER

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT
HILO DIVISION
STATE OF HAWAI'I

|                                   |   |                                   |
|-----------------------------------|---|-----------------------------------|
| ALBERT IAN SCHWEITZER,            | ) |                                   |
|                                   | ) | S.P.P. No. 17-1-0002              |
| Petitioner,                       | ) |                                   |
|                                   | ) | **DECLARATION OF BROOK HART**     |
|                                   | ) |                                   |
| vs.                               | ) |                                   |
|                                   | ) |                                   |
|                                   | ) |                                   |
| STATE OF HAWAI'I,                 | ) |                                   |
|                                   | ) |                                   |
| Respondent.                       | ) |                                   |
|                                   | ) |                                   |
|                                   | ) |                                   |
|                                   | ) |                                   |
|                                   | ) |                                   |
|                                   | ) |                                   |

## <u>DECLARATION OF BROOK HART</u>

1.      I am one of the two lead defense attorneys for Mr. Schweitzer in the above-entitled action, a Rule 40 petition. I serve as Mr. Schweitzer's attorney along with William Harrison and the Hawai'i Innocence Project.

2.      That attached hereto as Exhibit "A" is a true and correct copy of Hawaii Police Department Sgt. Gabriel Malani's report dated 12/25/1991 and Hawaii Police Department Officer Richard Marzo's report dated 1/9/1992.

3.      That attached hereto as Exhibit "B" is a true and correct copy of Hawaii Police Department Officer Robert Wagner's report dated 12/24/1991.

4.      That attached hereto as Exhibit "C" is a true and correct copy of Hawaii Police Department Officer H. Pinnow's report dated 12/24/1991.

1

5.     That attached hereto as Exhibit "D" is a true and correct copy of the Hawaii Police Department's death report of Dana Ireland.

6.     That attached hereto as Exhibit "E" is a true and correct copy of Hawaii Police Department Detective J. Coloma's report dated 12/25/1991 and Hawaii Police Department Detective Robert Kualii's report dated 1/15/1992.

7.     That attached hereto as Exhibit "F" is a true and correct copy of Frank Pauline Jr.'s statement on 06/19/1994.

8.     That attached hereto as Exhibit "G" is a true and correct copy of Frank Pauline Jr.'s statement on 04/22/1995.

9.     That attached hereto as Exhibit "H" is a true and correct copy of Hawaii Police Department Major Richard Carter's report dated 12/16/1994 and Hawaii Police Department Detective Steven Guillermo's report dated 02/01/1995.

10.     That attached hereto as Exhibit "I" is a true and correct copy of the indictment served on John Gonsalves on 11/10/1993 and a Plea Agreement thereafter on 12/14/1994.

11.     That attached hereto as Exhibit "J" is a true and correct copy of Trial Transcript Records of Albert Ian Schweitzer's trial dated 02/02/2000 and a Letter from John Gonsalves seeking a reward for his involvement in the Dana Ireland investigation.

12.     That attached hereto as Exhibit "K" is a true and correct copy of the indictment served on Albert Ian Schweitzer and Shawn Schweitzer on 10/09/1997.

13.     That attached hereto as Exhibit "L" is a true and correct copy of a Star-Bulletin news article written by Rod Thompson on 10/21/1998.

2

14. That attached hereto as Exhibit "M" is a true and correct copy of the transcript from the Grand Jury proceedings on 05/19/1999 to re-indict Albert Ian Schweitzer.

15. That attached hereto as Exhibit "N" is a true and correct copy of Michael Ortiz's partial testimony on 02/03/2000 in State of Hawai`i v. Albert Ian Schweitzer.

16. That attached hereto as Exhibit "O" is a true and correct copy of a Star-Bulletin news article written by Rod Thompson on 05/20/1999.

17. That attached hereto as Exhibit "P" is a true and correct copy of Michael Ortiz's partial testimony on 02/03/2000 in State of Hawai`i v. Albert Ian Schweitzer.

18. That attached hereto as Exhibit "Q" is a true and correct copy of William Perriera's partial testimony on 02/09/2000 in State of Hawai`i v. Albert Ian Schweitzer.

19. That attached hereto as Exhibit "R" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

20. That attached hereto as Exhibit "S" is a true and correct copy of Robert Wagner's partial testimony on 01/24/2000 in State of Hawai`i v. Albert Ian Schweitzer.

21. That attached hereto as Exhibit "T" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 and 02/08/2000 in State of Hawai`i v. Albert Ian Schweitzer and a letter from Lincoln Ashida to James Biven on 01/29/2000.

22. That attached hereto as Exhibit "U" is a true and correct copy of Steven Guillermo's partial testimony on 02/08/2000 in State of Hawai`i v. Albert Ian Schweitzer.

23. That attached hereto as Exhibit "V" is a true and correct copy of Steven Guillermo's partial testimony on 02/08/2000 in State of Hawai`i v. Albert Ian Schweitzer.

24. That attached hereto as Exhibit "W" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

25. That attached hereto as Exhibit "X" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

26. That attached hereto as Exhibit "Y" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

27. That attached hereto as Exhibit "Z" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

28. That attached hereto as Exhibit "AA" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

29. That attached hereto as Exhibit "BB" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

30. That attached hereto as Exhibit "CC" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

31. That attached hereto as Exhibit "DD" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

32. That attached hereto as Exhibit "EE" is a true and correct copy of Steven Guillermo's record of his police interview of Kenneth Schweitzer dated 07/05/1996.

33. That attached hereto as Exhibit "FF" is a true and correct copy of a Star-Bulletin news article written by Rod Thompson dated 10/21/1998.

34. That attached hereto as Exhibit "GG" is a true and correct copy of the transcript from the Grand Jury proceedings on 05/19/1999 to re-indict Albert Ian Schweitzer.

4

35.    That attached hereto as Exhibit "HH" is a true and correct copy of James Campbell's Supplementary Report to his Report dated 07/18/1999.

36.    That attached hereto as Exhibit "II" is a true and correct copy of Peter Van Name Esser's partial Appellate Opening Brief on behalf of Albert Ian Schweitzer dated 12/22/2000.

37.    That attached hereto as Exhibit "JJ" is a true and correct copy of Peter Van Name Esser's partial Appellate Opening Brief on behalf of Albert Ian Schweitzer dated 12/22/2000.

38.    That attached hereto as Exhibit "KK" is a true and correct copy of Peter Van Name Esser's partial Appellate Opening Brief on behalf of Albert Ian Schweitzer dated 12/22/2000.

39.    That attached hereto as Exhibit "LL" is a true and correct copy of Peter Van Name Esser's partial Appellate Opening Brief on behalf of Albert Ian Schweitzer dated 12/22/2000.

40.    That attached hereto as Exhibit "MM" is a true and correct copy of Peter Van Name Esser's partial Appellate Opening Brief on behalf of Albert Ian Schweitzer dated 12/22/2000.

41.    That attached hereto as Exhibit "NN" is a true and correct copy of Steven Guillermo's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

42.    That attached hereto as Exhibit "OO" is a true and correct copy of Lynn Matthew's partial testimony, Charla Figueroa's partial testimony, and Steve Dearing's partial testimony all on 01/27/2000 in State of Hawai`i v. Albert Ian Schweitzer.

43.    That attached hereto as Exhibit "PP" is a true and correct copy of a report

concluded by Forensic Analytical in 1999 on DNA evidence.

44.     That attached hereto as Exhibit "QQ" is a true and correct copy of a report concluded by ReliaGene in 2007 on DNA evidence.

45.     That attached hereto as Exhibit "RR" is a true and correct copy of a report concluded by Orchid Cellmark in 2008 on DNA evidence.

46.     That attached hereto as Exhibit "SS" is a true and correct copy of a report concluded by Cellmark Forensics in 2014 on DNA evidence.

47.     That attached hereto as Exhibit "TT" is a true and correct copy of an e- mail sent from Carolyn Booker to HIP on 07/25/2016.

48.     That attached hereto as Exhibit "UU" is a true and correct copy of a declaration by Dr. David Haymer dated January 11, 2017.

49.     That attached hereto as Exhibit "VV" is a true and correct copy of a letter sent from Brook Hart to Mitch Roth dated 10/28/2015.

50.     That attached hereto as Exhibit "WW" is a true and correct copy of a letter sent from Mitch Roth to Hawaii Police Department Chief Harry Kubojiri dated 01/05/2016.

51.     That attached hereto as Exhibit "XX" is a true and correct copy of a declaration by Brook Hart concerning DNA testing matters in this case, and HIP communications with Mitch Roth and Hawai'i Police Department personnel relating to DNA testing matters in this case.

52.     That attached hereto as Exhibit "YY" is a true and correct copy of a letter sent from Brook Hart to the Hawaii Police Department dated 03/16/2016.

53.     That attached hereto as Exhibit "ZZ" is a true and correct copy of a letter sent from HIP to Hawaii Police Department Chief Kubojiri dated 06/22/2016.

54.     That attached hereto as Exhibit "AAA" is a true and correct copy of a letter sent from Hawaii Police Department Chief Kubojiri to HIP dated 07/11/2016.

55.     That attached hereto as Exhibit "BBB" is a true and correct copy of a letter sent from HIP to Hawaii Police Department Chief Kubojiri dated 11/04/2016.

56.     That attached hereto as Exhibit "CCC" is a true and correct copy of a letter written by HIP law students in Hilo to Robert Wagner dated 11/11/2016.

57.     That attached hereto as Exhibit "DDD" is a true and correct copy of an e-mail from Robert Wagner to HIP dated 11/16/2016.

58.     That attached hereto as Exhibit "EEE" is a true and correct copy of a letter written by Robert Wagner to HIP dated 11/18/2016.

59.     That attached hereto as Exhibit "FFF" is a true and correct copy of an e-mail sent from the Hawaii Police Department to C. Alan Keel dated 12/05/2016.

60.     That attached hereto as Exhibit "GGG" is a true and correct copy of Kenneth Baker's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

61.     That attached hereto as Exhibit "HHH" is a true and correct copy of Kenneth Baker's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

62.     That attached hereto as Exhibit "III" is a true and correct copy of Kenneth Baker's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

63.     That attached hereto as Exhibit "JJJ" is a true and correct copy of Clyde Calhoun's most current CV (updated 2016) detailing his professional experience and qualifications as an expert witness in accident reconstruction/collision analysis.

64.     That attached hereto as Exhibit "KKK" is a true and correct copy of Clyde Calhoun's report providing his opinions and conclusions on collision analysis dated January

15, 2017.

65. That attached hereto as Exhibit "LLL" is a true and correct copy of Kenneth Baker's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

66. That attached hereto as Exhibit "MMM" is a true and correct copy of Kenneth Baker's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

67. That attached hereto as Exhibit "NNN" is a true and correct copy of Lincoln Ashida's, the Deputy Prosecuting Attorney in the trial of this case, opening statement made on 01/24/2000.

68. That attached hereto as Exhibit "OOO" is a true and correct copy of Kenneth Baker's partial testimony on 02/07/2000 in State of Hawai`i v. Albert Ian Schweitzer.

69. That attached hereto as Exhibit "PPP" is a true and correct copy of Peter Van Name Esser's partial Appellate Opening Brief on behalf of Albert Ian Schweitzer dated 12/22/2000.

70. That attached hereto as Exhibit "QQQ" is a true and correct copy of docket sheet entries for 1999 to 2001 in State of Hawai`i v. Albert Ian Schweitzer, Criminal No. 99-147 (Third Circuit Court).

71. That attached hereto as Exhibit "RRR" is a true and correct copy of "Defendant Albert Ian Schweitzer's Ex Parte Motion For Appointment Of Legal Assistant And Co-Counsel" (and supporting papers for that motion), filed on March 9, 1998, in State of Hawai`i v. Albert Ian Schweitzer, Criminal No. 97-338 (Third Circuit Court).

I DECLARE UNDER PENALTY OF LAW THAT THE FOREGOING FACTS ARE

TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Honolulu, Hawai`i, January _15_, 2018.

HAWAI`I INNOCENCE PROJECT

By: _____

BROOK HART, #723

Attorney for Petitioner
ALBERT IAN SCHWEITZER

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing documents and all supporting memoranda and exhibits were served via first-class United States Mail, postage prepaid, at the last known address of Respondent's counsel, which follows:

> Mitchell D. Roth, Prosecuting Attorney
> Office of the Prosecuting Attorney
> County of Hawai`i (Hilo)
> Aupuni Center, 655 Kilauea Avenue
> Hilo, HI 96720

and that one copy of the foregoing documents and one copy each of all supporting memoranda and exhibits were served via first-class United States Mail, postage prepaid, to each of the following attorneys at their respective last known addresses, which follow:

> James M.I. Biven
> 84-4799 Mamalahoa Highway
> Captain Cook, HI 96704
> (808) 987-3006

> and

> Peter V.N. Esser
> Peter Esser Law Offices
> P.O. Box 11170
> Honolulu, HI 96828
> (808) 538-3636
> peteresser@mac.com

Dated: Honolulu, Hawai`i    1/15/18    .

by:    _____
BROOK HART, #223

_____
WILLIAM A. HARRISON, #2948

Attorneys for Petitioner
ALBERT IAN SCHWEITZER

9